# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 6098 | **DATE** | 8/4/2004 |
| **CASE TITLE** | Dana Malone vs. Jo Anne Barnhart et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Plaintiff's Motion for Summary Judgment [#8] is hereby **granted**; Commissioner's Motion for Summary Judgment [#21] is **denied**; Motion of Sherry Chillis for Summary Judgment [#23] is **denied**; the case is remanded to the Commissioner for further proceedings consistent with this Opinion. *AK*

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| ✓ | Notices mailed by judge's staff. | AUG 05 2004 date docketed |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| ✓ | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | 8/4/2004 date mailed notice |
| FT/*Reny* courtroom deputy's initials | Date/time received in central Clerk's Office | FT mailing deputy initials |

Document Number: 31

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DANA L. MALONE on behalf of )
THEOPLUS RANDOLPH, JR., )
 )
       Plaintiff, )
 )
v. ) Case No. 03 C 6098
 )
JO ANNE B. BARNHART, ) Magistrate Judge Arlander Keys
Commissioner of Social )
Security, and SHERRY CHILLIS, )
on behalf of M.L.H. and )
M.D.H., )
 )
       Defendants. )

## MEMORANDUM OPINION AND ORDER

On June 6, 2000, Dana Malone filed an application for Child's Insurance Benefits on behalf of Theoplus D. Randolph, Jr. (Theoplus Jr.), her minor son. The application sought benefits on the account of Lamond Hudson, who died fully insured on January 28, 1999. The Social Security Administration ("SSA") denied Ms. Malone's application on July 6, 2000, after determining that Ms. Malone failed to show that Theoplus Jr. was Mr. Hudson's son. Ms. Malone sought reconsideration, and the initial decision was affirmed on April 18, 2001. Record at 75-77. Ms. Malone then requested a hearing, and the case was assigned to Administrative Law Judge John P. Brundage, who heard

the matter on June 11, 2002.[1]

At the hearing before the ALJ, Ms. Malone appeared, as did her attorney and Mr. Hudson's mother. The parties submitted documents to the ALJ, including: (1) a copy of Theoplus Jr.'s birth certificate, showing that he was born in Chicago on June 12, 1995 and listing "Theoplus D. Randolph" as the father (Record at 80); (2) a copy of Lamond Hudson's death certificate, issued by the Indiana State Department of Health, showing that Mr. Hudson died on January 28, 1999 of hypotension, renal failure and glucocytosis (Record at 81); (3) a copy of DNA paternity testing results done by Dr. Charles Strom of Reproductive Genetics Institute in Chicago on May 26, 2000, indicating that Lamond Hudson "cannot be excluded from being the father of Theoplus Randolph"; in fact, the report shows a "combined paternity index" of 4461274, showing that the "probability of paternity" was 99.9999776% (Record at 82); (4) a statement by Theoplus Randolph, written on an SSA form, that he knows he is Theoplus Jr.'s biological father (Record at 83); and (5) an "Order Declaring Heirship," entered in the Cook County Probate Court on August 3, 2000, and declaring that "Theopolus Randolph" is one of three heirs of Lamond L. Hudson (Record at 85).

---

[1] ALJ Brundage initially convened the hearing on April 4, 2002. But when he learned that Mr. Hudson actually had two children whose benefits could be affected by any decision on Ms. Malone's claim, he continued the case so that those children could receive notice of the hearing.

The ALJ opened the hearing by questioning Mr. Hudson's mother about the DNA record she sought to submit:

> ALJ: Then there's a paternity testing result dated April 17, 2000. That brings up the question of what did they test that's –
>
> ATTY: They tested the son. The claimant here.
>
> ALJ: And the deceased, how can you test the deceased? What did he submit?
>
> ATTY: Ms. Hudson?
>
> WTN: They had his remains because they were doing an autopsy so the person that did it had reserved it for a year after his death.
>
> ALJ: The person that did what?
>
> WTN: The autopsy on my son. She had his organs. The end organs.
>
> ALJ: Do you know who that was?
>
> WTN: Yes, I do.
>
> ALJ: That should be explained, I would think.
>
> WTN: Do I understand you want me to explain it or you want her to explain it or –
>
> ALJ: I mean, you know, something was submitted – I don't know. You could submit anything and say it was the remains of your son. I don't know. It's just a question that should be answered.
>
> WTN: Okay.

Record at 40-41.

The ALJ then turned to other issues, first questioning Ms. Hudson about the probate proceedings in Cook County, and about the cause of her son's death, Record at 41-42, and then

questioning Ms. Malone. Ms. Malone testified that neither Lamond Hudson (the alleged father), nor Theoplus Randolph (whose name appears on Theoplus Jr.'s birth certificate), provided any kind of support to Theoplus Jr.; indeed, she testified, Randolph disappeared from the picture when Theoplus Jr. was about eight or nine months old, and Hudson had never been in the picture at all. Record at 45-47. She testified that the issue of paternity had "always been a question mark" to her, and that she "never knew for sure until I seen Lamont and Theophilus together and of course, when Ms. Hudson, you know, asked." Record at 47. She testified that she and Hudson "dated off and on until the day he died"; that if they had time to see each other they did, but they both saw other people as well. Record at 50. Finally, she testified that, after Hudson died, Theoplus Jr. received part of the proceeds of his estate, which consisted largely, if not entirely, of life insurance proceeds. Record at 50.

At the end of the hearing, the ALJ again raised some concerns about the DNA testing:

> ALJ: . . . The only question remaining in my mind is the validity of the testing. The testing was done long after the father was deceased and I think there's – there would have to be some explanation of what they tested. I mean –
>
> ATTY: Well, isn't that before the – doesn't – the issue is whether it satisfies the Illinois statute and it did.
>
> ALJ: Well –

4

> ATTY: That was before the [INAUDIBLE] of Illinois.
>
> ALJ: Well, that - it was uncontested. I'm not quite sure about the law involved but I don't think I'm bound by what some judge in Probate Court did based on a document created almost a year after the deceased's death. I don't think he or she went into that question. They accepted it at face value. If it's a legitimate DNA, well then the man is the father. There's just no question about it. But what was it based on?
>
> * * *
>
> ATTY: Well, if you'd like I can contact the attorney that's involved in that case and ask him to -
>
> ALJ: Well, I think that should be done. . . . you have some time to get that. I would get it as soon as possible. Whether from the undertaker or the autopsy person or whoever saved this DNA should explain that. It's in the file unexplained.

Record at 54-55.

Finally, on questioning from Ms. Malone's attorney, Ms. Hudson testified that she took the initiative in establishing paternity after she saw Theoplus Jr. at her son's funeral, saw that he looked like her son, and then questioned Ms. Malone on the subject. *Id.* at 55-56. She testified that she pursued the issue because she thought it was "the right thing to do." *Id.* at 56.

Following the hearing, the ALJ immediately closed the record. It is unclear whether Ms. Hudson, or Ms. Malone or her attorney ever followed through on any attempt to assuage the ALJ's concerns and doubts about the DNA testing results. There is nothing further in the file from any "undertaker or autopsy person"; nor is there any other documentation independently

5

establishing the legitimacy of the test results. The ALJ's decision says nothing about any such attempts and does not otherwise explain what, if anything, transpired on the issue after the hearing.

The ALJ closed the record on June 11, 2002, and issued his decision three months later, on September 23, 2002. He found that Theoplus Jr. did not "meet the relationship requirements described in the Social Security Act," and was, therefore, not entitled to benefits. In particular, in response to an argument from Ms. Malone's counsel that the DNA test results, coupled with the Order of Heirship issued by the Probate Court of Cook County, give rise to a presumption of paternity, the ALJ found that:

> [t]he report of the DNA testing was not an original document of the testing and did not contain written evidence that what was tested belonged to the deceased. As Lamond Hudson is unable to challenge the results of the paternity testing and the Order of Heirship . . . I am not persuaded that there is clear and convincing evidence to overcome the presumption of paternity.

Record at 13-14.

The ALJ's decision became the final agency decision when the Appeals Council denied review on June 27, 2003. See 20 C.F.R. §416.1481. Ms. Malone then filed this lawsuit, seeking review of the decision to deny Theoplus Jr. benefits. The parties consented to proceed before a magistrate judge, and the case was reassigned to this Court on January 29, 2004. Thereafter, both parties moved

6

for summary judgment.[2]

## Discussion

An ALJ's decision must be affirmed if it is free of legal error and supported by substantial evidence, 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002); that is, evidence that "a reasonable mind would accept as adequate to support a conclusion." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)(citations omitted). Where, however, "the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940. In the Seventh Circuit, an ALJ must "build an accurate and logical bridge from the evidence to [his] conclusions so that [the Court] may afford the claimant meaningful review of the SSA's ultimate findings." *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). It is not enough that the record contains evidence to support the ALJ's decision; if the ALJ does not rationally articulate the grounds for that decision, the Court must remand. *Steele*, 290 F.3d at 941.

Under this standard, Ms. Malone argues, the Commissioner's decision must be reversed because the ALJ's decision concerning Theoplus Jr.'s paternity was incorrect under the law and not

---

[2] The mother of Mr. Hudson's other children, Sherry Chillis, who was joined as a necessary party to this litigation, filed a separate motion for summary judgment adopting, in total, the Commissioner's motion and memorandum of law.

7

supported by substantial evidence. The Commissioner disagrees and asks the Court to affirm the ALJ's decision.

The Social Security Act provides for a "child's insurance benefit" to

> [e]very child . . . of an individual who dies a fully or currently insured individual, if such child-
> (A) has filed an application for child's insurance benefits,
> (B) at the time such application was filed was unmarried and . . . had not attained the age of 18 . . . and
> (C) was dependent upon such individual . . . at the time of [his] death . . . .

42 U.S.C. §402(d)(1). In determining whether an applicant is the child of a fully insured individual, "the Commissioner of Social Security shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which [the deceased insured individual] was domiciled at the time of his death. . . ." 42 U.S.C. §416(h)(2)(A). Moreover, "[a]pplicants who according to such law would have the same status relative to taking intestate personal property as a child . . . shall be deemed such. *Id.* And "[a]ny applicant who is able to show 'child' status under Section 416(h)(2)(A) is deemed 'dependent' as well and is thus eligible for child's insurance benefits under Section 402(d)(1)." *Hullum v. Sullivan*, 762 F.Supp. 1324, 1326 (N.D. Ill. 1991)(citing *Mathews v. Lucas*, 427 U.S. 495, 499 n.2 (1976)).

The record shows that Mr. Hudson was domiciled in Illinois

when he died, and so, in making his determination as to Theoplus Jr.'s status, the ALJ properly turned to Illinois law. The Illinois Probate Act, which in Illinois governs "the devolution of intestate personal property," provides that "[i]f a decedent has acknowledged paternity of an illegitimate person or if during his lifetime or after his death a decedent has been adjudged to be the father of an illegitimate person, that person is heir of his father . . . " 755 ILCS 5/2-2. "If during his lifetime the decedent was adjudged to be the father of an illegitimate person by a court of competent jurisdiction, an authenticated copy of the judgment is sufficient proof of the paternity; but in all other cases paternity must be proved by clear and convincing evidence." *Id.* Thus, under Illinois law, Theoplus Jr. was Hudson's heir – he was, in other words, eligible to inherit Hudson's intestate personal property. But because that Order of Heirship, the adjudication of paternity, was not entered until after Hudson's death, paternity would have to have been established by clear and convincing evidence. Clear and convincing evidence in this context is "more than a preponderance" but less than "the degree of proof necessary to convict a person of a criminal offense." *Binion ex rel. Binion v. Chater*, 108 F.3d 780, 783 (7th Cir. 1997).

In addition to the Illinois Probate Act's provisions, the Illinois Parentage Act provides for a presumption of paternity in certain circumstances. First, if a man and the child's natural

9

mother are married, either when the child is conceived or when the child is born, or if they marry after the child is born and the man is named on the child's birth certificate, a presumption of paternity arises, and that presumption is rebuttable, but only with clear and convincing evidence. 750 ILCS 45/5(a)(1), (a)(2), (b). Additionally, if a man and the child's natural mother have signed "an acknowledgment of paternity" or "an acknowledgment of parentage" – both specific types of documents defined and described under Illinois law – a presumption of paternity arises, and that presumption is conclusive, unless the acknowledgment of parentage is rescinded. 750 ILCS 45/5(a)(3), (a)(4), (b). Hudson and Ms. Malone never married, Hudson was not named on the birth certificate, and he never acknowledged paternity or parentage in the manner required in the Act (or in any manner, for that matter). Thus, none of the above presumptions would be available to establish paternity on the part of Lamond Hudson. But, by the same token, none of the above presumptions would be available to establish paternity on the part of Theoplus Randolph; although he was named on the birth certificate, he and Ms. Malone never married, and there is nothing in the record to show that he ever acknowledged paternity or parentage in the manner required in the Illinois Parentage Act.

The ALJ did not specifically reference the Illinois statutes he was applying. He did speak in terms of "clear and convincing

evidence," and he did note both the Order of Heirship and the DNA testing results, which sort of suggests that he was on the right track. But he also determined that the DNA test results – suspect in his mind – were not sufficient "to overcome the presumption of paternity." Record at 14. This is problematic for two reasons. First, it is not clear what presumption he was actually applying, making it impossible for the Court to review his ultimate conclusion. And, second, under the circumstances presented, Illinois law does not support a presumption based on anything other than the DNA test results, which was quite clearly not the presumption applied by the ALJ. To the extent the ALJ presumed Theoplus Randolph to be the father, and then required Ms. Malone to overcome that presumption by clear and convincing evidence – which seems to be the case – his decision is wrong as a matter of law. The ALJ emphasized that Theoplus Randolph signed the birth certificate and that he was unwilling to deny paternity. But that would have mattered under Illinois law only if he and Ms. Malone had married, or if he had signed "an acknowledgment of paternity" or "an acknowledgment of parentage." And none of those things happened here. As explained above, based on the record, Illinois law would not permit any presumption to be made with respect to Theoplus Randolph; certainly no presumption arises from the mere fact that he signed the birth certificate.

The Commissioner argues that the ALJ "properly relied upon the

instructions concerning Illinois state law contained in the POMS, the operating manual through which the Agency gives instructions to its decisionmakers," see Defendant-Commissioner's Memorandum in Support of Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment, p. 7. But those instructions are, at best, ambiguous on the question of what an ALJ should do, in a case like this, where paternity *has been* proven, albeit in probate court, by clear and convincing evidence. According to the POMS, which the Commissioner attached to her brief, under Illinois law, "a child acquires the status of child, and a father acquires the status of parent if: . . . following the father's death paternity is proven by clear and convincing evidence." It seems unlikely that the SSA meant to suggest, through the POMS, that proof of paternity by clear and convincing evidence in a probate proceeding compels a finding in Social Security proceedings that a parent-child relationship has been established. But the POMS, as written, certainly allows for that interpretation. In this case, as evidenced by the Order of Heirship, paternity *was* proven by clear and convincing evidence. And, indeed, not only *could* Theoplus Jr. take Hudson's property under the Illinois law governing the devolution of intestate personal property, he *did* take Hudson's property under that law. This fact would seem to suggest that Theoplus Jr. is entitled to "child" status. See 42 U.S.C. §416(h)(2)(A). And the POMS does not explicitly undermine this

12

conclusion. Moreover, even under the plain language of the POMS, the applicable presumption here would seem to have been the presumption that, based on the paternity test results, Hudson was Theoplus Jr.'s father.

Also troubling is the fact that the ALJ, who presumably lacks the scientific expertise necessary to interpret DNA test results in a manner other than that described in the POMS (i.e., doing more than simply assessing whether the combined paternity index is at least 500 to 1), took it upon himself to question the validity of the DNA test results, but then never developed the record as to any attempts made to validate or authenticate the test results. In fact, the ALJ invited counsel to provide additional information, but then he immediately closed the record and issued his decision, seemingly without providing counsel with the opportunity to satisfy his concerns. As the ALJ acknowledged, if the DNA test report is valid, there can be no question that Hudson was Theoplus Jr.'s father. The additional probate records, which were introduced in this Court but were not included in the record before the ALJ – possibly because the ALJ closed the record prematurely – may shed some additional light on the subject. Those records, which cannot be considered by this Court in the first instance, would seem to show that an Illinois court, applying the very law the ALJ is supposed to be applying, decided that, in fact, the paternity test constituted clear and convincing evidence of paternity. Implicit

13

in that decision is a finding that the chain of custody and authentication concerns, to the extent they existed, were satisfied. See 750 ILCS 45/11 (the section of the Illinois Parentage Act requiring chain of custody documentation for blood or tissue samples tested, or some form of certification to validate DNA tests). In light of this, it would seem to make sense, in the interests of fairness and justice, to remand the case to the ALJ to see whether any doubts still remain about the validity of the DNA test results, and whether such remaining doubts can be resolved once and for all.

## Conclusion

For the reasons set forth above, the Court grants Ms. Malone's motion for summary judgment and denies the Commissioner's motion. The case is remanded for further proceedings consistent with this opinion.

Dated: August 4, 2004

ENTER:

*Arlander Keys*
ARLANDER KEYS
United States Magistrate Judge